Sylvia BARNSON, surviving wife, Rodney E. Barnson, Randy D. Barnson, Eldora Barnson Johnson, John Steve Barnson, Julia Mae Barnson Wise, and Maida Barnson Simms, surviving children, heirs of Earl S. Barnson, deceased; Vonda L. Cropper, surviving wife, Helen E. Cropper Davis, Janice Cropper Peterson, William D. Cropper, Charles L. Cropper, and Lorraine Cropper Harris, surviving children, heirs of William E. Cropper, deceased; Eva Dean Hanson, surviving wife, Clyde E. Hanson, David B. Hanson and Shane Hanson, surviving children of Byron Hanson, deceased; Vivian P. Howes, surviving wife of Lester Ralph Peterson, deceased; Maurine Pitts, surviving wife of Elbert Pitts, deceased; Rowena Anderson, surviving wife, Byron Anderson, Terral Anderson, and Robert Mellor, surviving children, heirs of Byron Anderson, deceased; Leola Christensen, surviving wife, Alvin Christensen, Karl Christensen, Neil Christensen, and Colleen Peterson, surviving children, heirs of Alvin Christensen, deceased; John Dinsmore; Edna Fisher, surviving wife of Stanley Fisher, deceased; Rell Frederick; Margaret Bodtcher, surviving child, heir of Byron Hanson, deceased; Aldon McIntosh and Tony McIntosh, surviving children, heirs of LaMar McIntosh, deceased; Ada Morrill, surviving wife, Dale Morrill, Denzil Morrill, Steve Morrill, Ida Ann Newby, Cleora Peterson, and Thelma Pope, surviving children, heirs of Clarence Morrill, deceased; Norrene Neel, surviving wife, and Shelley Ann Neel, surviving child, heirs of Jack Neel, deceased; Carl Norton; Doyle Palmer, LaMond Palmer, and LuDale Palmer, surviving children, heirs of Edward Palmer, deceased; Gayle Nillson, surviving heir of Elbert Pitts, deceased; Margaret Quinn, surviving wife, Gary Quinn, Milton Quinn, and Janet Lott, surviving children, heirs of George Quinn, deceased; Bernadine Hurley, surviving child, heir of Farley Smith, deceased; Ida Mae Swenson, surviving wife, Lance Snow, Lon Snow, Lynn Snow, and Shaun Thomson, surviving children, heirs of LeMoyne Snow, deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. C–80–0119A, C–81–0045W, C–81–0715J, C–81–0719W.

United States District Court, D. Utah, C.D.

July 1, 1985.

See also, D.C., 531 F.Supp. 614.

Stewart L. Udall, Phoenix, Ariz., Wayne Owens and Kenley Brunsdale, Salt Lake City, Utah, and Thomas S. Udall, Santa Fe, N.M., for plaintiffs.

Edward Jiran, Laura Rockwood and Russell Young, U.S. Dept. of Energy, Paul F. Figley, U.S. Dept. of Justice, Washington, D.C., and Brent D. Ward and Lawrence J. Leigh, U.S. Attorney's Office, Salt Lake City, Utah, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

### I. INTRODUCTION

The plaintiffs in this case seek compensation for serious illness and death suffered by numerous uranium miners. According to the plaintiffs, these miners incurred injury from radiation in the Marysvale, Utah uranium mines. The original complaint alleged tort claims against the uranium company (Vanadium Corporation of America and its successor Foote Mineral Company) and the United States. The plaintiffs settled the case against Vanadium Corporation and Foote Mineral on January 31, 1985. The United States is the only remaining defendant.

The claims against the United States stem from a Public Health Service study which began in Marysvale, Utah 35 years ago. The study gathered data about the dangers of uranium mining. According to the plaintiffs, the study revealed that uranium miners worked in extremely dangerous conditions. The complaint alleges that miners suffered radiation injury because the federal government breached a duty to warn them of radiation hazards. The plaintiffs also claim that the government breached a duty to regulate mine safety. These claims against the United States arise under the Federal Tort Claims Act.

On December 19, 1984, the United States moved for summary judgment, arguing that sovereign immunity bars the plaintiffs' suit. The United States is immune from suit unless Congress waives the immunity. *See, e.g., Dalehite v. United States,* 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953). The Federal Tort Claims Act eliminates immunity for many tort suits against the federal government. Nonetheless, the "discretionary function" exception to that Act retains sovereign im-

munity for claims "... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception prevents "... judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. Varig Airlines,* 467 U.S. 797, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984). Arguing that the acts giving rise to the complaint were discretionary, the United States moves for summary judgment.

## II. DECISION NOT TO WARN

The complaint alleges that the Public Health Service negligently failed to warn the uranium miners of radiation danger. The parties agree that the Service undertook a study of the health effects of mine radiation and failed to disclose the study results to the affected miners. The issue here is whether the decision not to warn was "discretionary" under 28 U.S.C. § 2680(a).

### A. IMMATERIAL FACTUAL DISPUTES

The court must first determine whether genuine and material factual disputes preclude summary judgment.

The parties disagree over the extent to which the government knew of radiation dangers when the Public Health Service study began. This dispute relates to the foreseeability of the alleged injury. Foreseeability is an important element of the negligence issue, yet the discretionary function exception immunizes discretionary acts whether they are negligent or not. 28 U.S.C. § 2680(a). Foreseeability is therefore immaterial to the issue now before the court.

Other factual disputes are immaterial because they relate to negligence rather than sovereign immunity. These disputes include the issue of when and how the study

began, the question whether the government did an objective study and the disagreement over the year that federal officials first learned of significant radiation dangers. The plaintiffs' allegations concerning the "unique Marysvale situation" fit into the same category. According to the plaintiffs, Marysvale was a "special laboratory" used by federal officials to learn about radiation hazards. The plaintiffs argue that this special relationship between the miners and federal investigators created a heightened duty for the defendant. The extent of the duty owed to the plaintiffs is material to the negligence issue and immaterial to the question whether a discretionary decision occurred.

The parties also disagree over the status of the government officials who made the decision not to warn. According to the defendant, high level officials in the Public Health Service and Atomic Energy Commission made the decision. In addition, the defendant claims that a study protocol issued from high levels at the Public Health Service. The defendant alleges that this protocol directed the study toward collection of data; educating miners was not an objective of the study.

The plaintiffs claim that Duncan Holaday, a Public Health Service Investigator, made the decision not to warn the miners. According to the plaintiffs, no study protocol even existed; Holaday made the decision "in the field" without direction from higher authorities. The plaintiffs do not address the AEC's role in the decision.

The court is convinced that the dispute over the status of the decisionmaker is not material to the immunity issue. In the *Varig Airlines* case, the Supreme Court reaffirmed the principle that "... it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." 104 S.Ct. at 2765. In determining the nature of the disputed conduct here, it is immaterial whether high level officials made the decision or directed field workers through a protocol. The critical question is whether the decision not to

warn is appropriately characterized as "discretionary." The court turns to this question next.

## B. THE NATURE OF THE DECISION

■ The parties do not dispute the two considerations that motivated the decision not to warn. First, the parties agree that the study would not have been possible without secrecy. The uranium mines were on private property. The government needed private owners' permission to gain access to the mines. Afraid that adverse publicity might make the miners flee, the owners conditioned access to the mines upon an agreement that the government would keep the study results from the miners.

Second, according to the defendant, the Atomic Energy Commission's concerns about national security influenced the decision not to warn. The AEC feared that informed miners would flee the mines and thereby threaten the nation's uranium supply. The plaintiffs do not dispute this contention.

Given the two considerations discussed above, the court believes that the decision not to warn was discretionary within the meaning of 28 U.S.C. § 2680(a). The court believes that the agreement with the private mine owners arose from the social and political concerns which led to the study in the first place. The agreement involved the type of policy judgments which are at the core of the discretionary function exception. The AEC's judgment falls into the same category. The court believes that national security judgments are classic examples of the social and political decisions that the discretionary function exception was intended to immunize. *See Varig Airlines*, 104 S.Ct. at 2768.

## C. GOOD SAMARITAN CLAIM

The plaintiffs argue that the discretionary function exception does not apply to their "good samaritan" claim. The plaintiffs suggest that government acts, whether discretionary or not, create an actionable duty if analogous acts by a private individual would create a good samaritan duty.

The plaintiffs' good samaritan claim arises from the decision not to publicize the study results. According to the plaintiffs, the government created a duty of due care when it voluntarily began the uranium miner study. The plaintiffs argue that this good samaritan responsibility included a duty to warn the miners that they were in danger.

■ The case law does not support this view. Because discretionary acts are immune regardless of whether they are negligent, the existence of a good samaritan duty is irrelevant to the discretionary function inquiry. *See Russell v. United States*, 763 F.2d 786, 787 (10th Cir.1985); *General Public Utilities Corp. v. United States*, 745 F.2d 239, 243 n. 6 (3d Cir.1984). The plaintiffs' cases are in accord. Some cases cited by the plaintiffs attach good samaritan responsibility to the government when its acts are operational rather than discretionary. *See McMichael v. United States*, 751 F.2d 303, 305–06 (8th Cir.1985); *Varig Airlines*, 104 S.Ct. at 2766. The plaintiffs' other cases either support this court's analysis or turn upon factors other than the discretionary function doctrine. *See Varig Airlines* at 2764–65. The plaintiffs cite no cases for the proposition that discretionary government acts can establish an actionable good samaritan duty. Summary judgment is justified for the good samaritan claim.

## D. PROFESSIONAL NEGLIGENCE CLAIM

The professional negligence claim also arises from the failure to warn. According to the plaintiffs, the medical doctors and industrial hygienists involved in the Public Health Service study owed a heightened duty of care to the plaintiffs. The plaintiffs claim that these professionals should have warned the miners of their dangerous working conditions. The plaintiffs imply that these professionals' judgments were nondiscretionary by nature.

The case law does not remove immunity for professional judgments. The analysis of professional negligence under the discretionary function doctrine is no different from the analysis of ordinary negligence. The critical question is whether the professional's act was grounded in a policy decision. *See, e.g., Blessing v. United States,* 447 F.Supp. 1160, 1185 (E.D.Pa.1978).

■ As the court notes above, the decision not to warn was discretionary. Any professionals who assisted in making that decision therefore performed a discretionary function. Professionals who *complied* with the policy decision by failing to warn that uranium ore, either alone or in combination with x-ray treatment, might be harmful also performed a discretionary function. As the Supreme Court noted in *Dalehite v. United States,* 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953), "... acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." *See also Allen v. United States,* 588 F.Supp. 247, 336–37 (D.Utah 1984). Summary judgment is justified for the professional negligence claim.

## IV. THE DECISION NOT TO REGULATE

The complaint alleges that the government breached a duty to regulate uranium mine safety. For the reasons stated below, summary judgment is justified for the claims arising from the alleged failure to regulate.

### A. FAILURE TO REGULATE THROUGH CONTRACT

■ The plaintiffs contend that the Atomic Energy Commission was negligent because it did not require safety procedures in its uranium procurement contracts. The decision whether to regulate safety through such contracts requires an analysis of various social and political factors. It is the type of judgment which should not be second-guessed by the judiciary. Such judgments come within the core of discretionary decisionmaking. *See,* *e.g., Blaber v. United States,* 332 F.2d 629, 631 (2d Cir.1964). Summary judgment is justified for the claims arising from the contract allegations.

The Walsh-Healey Act, 41 U.S.C. § 35 *et seq.,* which requires inclusion of certain safety requirements in public contracts, does not change this conclusion. The plaintiffs are estopped from asserting claims arising from that Act. In one of the cases now consolidated before this court, Judge David K. Winder ruled that the Walsh-Healey Act does not establish an actionable tort duty. Order Granting Defendant's Motion to Dismiss (Filed July 8, 1981 in C–81–0045W).

### B. FAILURE TO REGULATE THROUGH RULEMAKING

The parties dispute whether federal officials made a conscious decision to leave regulation of mine safety to the states. Even if the plaintiffs are correct, and the government made no such decision, failure to adopt *federal* safety regulations was discretionary activity.

When the government fails to adopt safety regulations, it usually performs a discretionary function. *See, e.g., Miller v. United States,* 522 F.2d 386 (6th Cir.1975) (failure to adopt stricter air safety regulations is immune discretionary function); *Baird v. United States,* 653 F.2d 437 (10th Cir.1981) (failure to make safer airline flight information materials is immune discretionary function); *Garbarino v. United States,* 666 F.2d 1061 (6th Cir.1981) (failure to promulgate regulations requiring a "crashworthiness" test is immune discretionary function).

■ If an agency has a mandatory duty to regulate a particular field, an exception to the usual rule applies. The discretionary function exception does not immunize failure to comply with a mandatory duty. *See, e.g., Payton v. United States,* 636 F.2d 132 (5th Cir.1981); *Griffin v. United States,* 500 F.2d 1059 (3d Cir.1974).

There is no mandatory duty in this case which would remove sovereign immunity.

The Public Health Service and HEW did not even have authority to compel mine operators or state officials to take remedial action. *See Begay v. United States*, 591 F.Supp. 991, 995–96 (D.Ariz.1984).

The plaintiffs do however cite the Atomic Energy Act for the proposition that the AEC had a mandatory duty to regulate mine safety:

> (a) The Commission is directed to exercise its powers in such manner as to insure the continued conduct of research and development and training activities in the fields specified below, by private or public institutions or persons, and to assist in the acquisition of an ever-expanding fund of theoretical and practical knowledge in such fields. To this end the Commission is authorized and directed to make arrangements (including contracts, agreements, and loans) for the conduct of research and development activities relating to—... (5) the protection of health and the promotion of safety during research and production activities.... (d) The arrangements made pursuant to this section shall contain such provisions (1) to protect health, (2) to minimize danger to life or property, and (3) to require the reporting and to permit the inspection of work performed thereunder, as the Commission may determine.

42 U.S.C. § 2051.

The plaintiffs suggest that uranium mining is a "production activity" and that the PHS study was a "research activity" within the scope of § 2051(a)(5). As the defendant stresses, however, "production activities" concern manufacture of "special nuclear material," not extraction of "source material" such as uranium. *See* 42 U.S.C. §§ 2014(u) and (v); 1954 U.S.Code Cong. & Ad.News 3467; 42 U.S.C. §§ 2014(z) and (aa). Any AEC duties to reduce health problems associated with production activities did not extend to uranium mining.

[6] AEC duties concerning research activities did not extend to the Public Health Service study either. Section 2051(a) addresses protection of health in the context of research activities listed in other subsections of the same provision. The defendant correctly notes that the list in § 2051 concerns nuclear development *after* the mining stage. Section 2051 does not govern mining research. The court concludes that the AEC had no mandatory duty to regulate uranium mine safety. *See Begay*, 591 F.Supp. at 1003–1004. Summary judgment is therefore justified for the claims arising from the failure to regulate.

The court HEREBY GRANTS the defendant's motion for summary judgment.

The court directs the defendant to prepare and submit a judgment reflecting the result of this order.