Sylvia BARNSON, surviving wife, Rodney E. Barnson, Randy D. Barnson, Eldora Barnson Johnson, John Steve Barnson, Julia Mae Barnson Wise, and Maida Barnson Simms, surviving children, heirs of Earl S. Barnson, deceased; Vonda L. Cropper, surviving wife, Helen E. Cropper, surviving wife, Helen E. Cropper Davis, Janice Cropper Peterson, William D. Cropper, Charles L. Cropper, and Lorraine Cropper Harris, surviving children, heirs of William E. Cropper, deceased; Eva Dean Hanson, surviving wife, Clyde E. Hanson, David B. Hanson and Shane Hanson, surviving children of Byron Hanson, deceased; Maurine Pitts, surviving wife of Elbert Pitts, deceased, Rowena Anderson, surviving wife, Byron Anderson, Terral Anderson, and Robert Mellor, surviving children, heirs of Byron Anderson, deceased; Leola Christensen, surviving wife, Alvin Christensen, Karl Christensen, Neil Christensen, and Colleen Peterson, surviving children, heirs of Alvin Christensen, deceased; John Dinsmore Rell Frederick; Aldon McIntosh and Tony McIntosh, surviving children, heirs of LaMar McIntosh, deceased; Ada Morrill, surviving wife, Dale Morrill, Denzil Morrill, Steve Morrill, Ida Ann Newby, Cleora Peterson, and Thelma Pope, surviving children, heirs of Clarence Morrill, deceased; Norrene Neel, surviving wife, and Shelly Ann Neel, surviving child, heirs of Jack Neel, deceased; Carl Norton, Doyle Palmer, LaMond Palmer, and LuDale Palmer, surviving children, heirs of Edward Palmer, deceased; Gayle Nillson, surviving heir of Elbert Pitts, deceased; Margaret Quinn, surviving wife, Gary Quinn, Milton Quinn, and Janet Lott, surviving children, heirs of George Quinn, deceased; Bernadine Hurley, surviving child, heir of Farley Smith, deceased;

Ida Mae Swenson, surviving wife, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 85–2470.

United States Court of Appeals, Tenth Circuit.

April 17, 1987.

Stewart L. Udall, Phoenix, Ariz. (Thomas S. Udall, Albuquerque, N.M. and Kenly W. Burnsdale, Salt Lake City, Utah, with him on the briefs), for plaintiffs-appellants.

John P. Schnitker, U.S. Dept. of Justice, Washington, D.C. (Robert S. Greenspan, U.S. Dept. of Justice, Washington, D.C., Brent D. Ward, U.S. Atty., Salt Lake City, Utah, Richard K. Willard, Asst. Atty. Gen., Washington, D.C., J. Michael Farrell and Edward Jiran, Dept. of Energy, Washington, D.C.), for defendant-appellee.

Before McKAY and BALDOCK, Circuit Judges, and BROWN, District Judge.*

BALDOCK, Circuit Judge.

Uranium miners and survivors of deceased uranium miners brought suit against the United States to obtain money for injuries arising from radiation exposure. The district court granted summary judgment, finding the employees of the government performed discretionary functions and concluding the United States is

---

* Honorable Wesley E. Brown, United States District Judge, District of Kansas, sitting by desig-     nation.

immune from tort liability. For the reasons set forth below, we affirm.

## I.

Plaintiffs-appellants brought suit in February 1980 against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–80, seeking recovery for injuries sustained as a result of the exposure of miners to radiation in privately owned and operated mines in Utah. In particular, they alleged employees of the United States Public Health Service (PHS), who were conducting medical and environmental surveys associated with radiation in uranium mines, failed to warn miners of hazards, negligently provided safety services to miners, and were otherwise negligent. They also asserted that the Atomic Energy Commission (AEC) breached a statutory duty to protect miners from the radiation.[1] After extensive discovery, the government moved for summary judgment, arguing sovereign immunity bars recovery from the United States because of the discretionary function exception contained in the second clause of 28 U.S.C. § 2680(a).[2] The district court granted summary judgment, finding the acts of the government employees were discretionary and also ruling the AEC had no mandatory duty to regulate uranium mine safety. *Barnson v. United States,* 630 F.Supp. 418, 420–23 (D.Utah 1985).

On appeal, appellants assert summary judgment was improper because there exist disputed facts, the AEC had a mandatory duty to protect the miners, and the discretionary function exception should not apply to negligent medical care. We must decide, therefore, the following issues:

(1) whether the district court erred in finding that there are no material issues of fact in dispute which are pertinent to the government's defense of sovereign immunity;

(2) whether the district court erred in concluding the discretionary function exception should apply to the negligence claims; and

(3) whether the district court erred in concluding the AEC has no mandatory duty to protect the miners from radiation exposure.

## II.

The Federal Tort Claims Act provides a general exception to sovereign immunity by authorizing suits against the United States for

injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Although this is a broad waiver of immunity, the United States is subject to suit only to the extent provided by law, and the waiver may not be extended or narrowed beyond that which Congress intended. *Ewell v. United*

---

**1.** This case is very similar to *Begay v. United States,* 591 F.Supp. 991 (D.Ariz.1984), *aff'd,* 768 F.2d 1059 (9th Cir.1985). Indians who formerly worked in underground uranium mines brought suit under the Federal Tort Claims Act. The same PHS study was involved in *Begay.* The Indians alleged the government was actionably negligent (1) in leaving uranium mine safety outside the Indian reservation to the states, (2) in failing to enforce radiation safety levels in reservation mines, (3) in failing to warn miners of possible radiation injury, and (4) in failing to establish and enforce radiation safety standards in uranium mines. The district court and court of appeals ruled that the government was shielded from tort liability by the discretionary function exception.

**2.** 28 U.S.C. § 2680(a) provides that the Tort Claims Act's waiver of immunity shall not apply to

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused.* (Emphasis added.)

*States,* 776 F.2d 246, 248 (10th Cir.1985). Of particular importance here is the exception contained in 28 U.S.C. § 2680(a) for discretionary functions.

The discretionary function exception was carefully examined in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). *Dalehite* involved a suit against the United States arising from the explosion of two ships loaded with fertilizer. The government had engaged the ships pursuant to a federal assistance program to transport fertilizer to countries whose economies had been damaged by World War II. Plaintiffs alleged the government had been negligent in failing to label the fertilizer packages to warn of their volatility. In ruling that the discretionary function exception barred the suit, the Court observed that Congress created the exception to ensure that actions brought against the United States would be restricted to such "ordinary common law torts" as automobile collisions. 346 U.S. at 28, 73 S.Ct. at 964. It described the exception to include the initiation of programs and activities as well as

> determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

*Id.* at 35–36, 73 S.Ct. at 967–68.

More recently, the Court examined the discretionary function exception in *United States v. Varig Airlines,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). *Varig* involved suits against the United States for the alleged negligence by the Federal Aviation Administration (FAA) (or the Civil Aeronautics Agency, its predecessor) in inspecting certain aircraft modifications.

Plaintiffs alleged that the FAA's negligent failure to discover design defects led to several aircraft disasters. The Court ruled that plaintiffs could not recover under California's "good samaritan" rule because the actions giving rise to the suit, "spot-checking" manufacturer's compliance with safety standards, was determined to be a discretionary function. *Id.* at 820, 104 S.Ct. at 2767. It instructed that the application of the discretionary function exception is determined by the nature of the conduct rather than the status of the actor and that it clearly applies to regulatory activities. *Id.* at 813–14, 104 S.Ct. at 2764–65.[3]

### A. Factual Disputes

Appellants assert the district court erred in granting summary judgment because there exist disputed facts. In particular, they argue there are disputed facts concerning whether appellees were negligent and whether the decision not to warn was influenced by rational security concerns.

Summary judgment is a district court's decision that the moving party is "entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c); *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Because it is a legal decision rather than a finding of fact, it is subject to *de novo* review. *Morgan v. Mobil Oil Corp.,* 726 F.2d 1474, 1477 (10th Cir.1984). We therefore apply the standards set forth by the Supreme Court and Fed.R.Civ.P. 56(c) to this case.

The Supreme Court recently elaborated on the requirements for the grant of summary judgment. In *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the Court stated that summary judgment may be granted only when there is no "genuine issue of material fact," but cautioned that "the mere existence of *some* alleged factual dis-

---

**3.** The district court in this case relied on the Supreme Court's explanation of the discretionary function exception in *Varig.* On appeal, appellants assert that *Varig* is inapplicable to this case because *Varig* involved "regulatory responsibilities" which are not present in this case. Nothing in 28 U.S.C. § 2680(a) or in the law developed by the federal court limits the application of the discretionary function exception to regulatory activities. *Varig,* 467 U.S. at 809–10, 104 S.Ct. at 2762–63; *Dalehite,* 346 U.S. at 38, 73 S.Ct. at 969; *Begay v. United States,* 768 F.2d 1059, 1063–64 (9th Cir.1985). The analysis of the discretionary function exception contained in *Dalehite* and *Varig* is applicable to this case.

pute between the parties will not defeat an otherwise properly supported motion." (emphasis in original). Whether there is a genuine issue of material fact turns on whether "a proper jury question was presented." *Id.* Thus, the court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact. . . ." *Id.*, 106 S.Ct. at 2511. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, 106 S.Ct. at 2510.

■ The district court determined there were factual disputes among the parties, but concluded those disputes were irrelevant to the issue whether the government's acts were discretionary. *Barnson*, 630 F.Supp. at 420. The central issue in this case is whether federal officials exercised discretion by not warning miners of radiation hazards and not regulating uranium mining safety. Section 2680(a) maintains sovereign immunity "whether or not the discretion involved is abused." Thus, the discretionary function exception applies even when the discretionary acts constitute negligence. *General Public Utilities Corp. v. United States*, 745 F.2d 239, 245 (3d Cir.1984), *cert. denied*, 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985). Factual issues concerning negligence are irrelevant to the central issue whether the federal officials' actions were discretionary. *Hylin v. United States*, 755 F.2d 551, 553 (7th Cir.1985).

■ In determining the decision by federal officials not to warn miners of radiation hazards was discretionary, the district court found two factors dispositive: (1) the study would not have been possible without secrecy and (2) the AEC's concerns about national security influenced that decision. *Barnson*, 630 F.Supp. at 421. The court noted that those factors were not disputed. The appellants, however, now contend that the issue whether the decision not to warn was based on national security concerns is disputed. The record indicates that the United States supported its motion for summary judgment with exhibits demonstrating the AEC's concern that informed miners would flee the uranium mines and

threaten the nation's uranium supply. We have scrutinized the record and find nothing in appellants' response to the motion for summary judgment, the documents attached thereto, or in a transcript of a deposition of Jesse Johnson, a retired official of the Raw Materials Program of the AEC, which would contradict the government's assertions. A party opposing a motion for summary judgment must come forth with specific facts showing the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Dart Industries, Inc. v. Plunkett Co. of Okla.*, 704 F.2d 496, 497 (10th Cir.1983). Appellants have failed to respond with such facts, and the district court correctly concluded there were no issues of material fact.

### B. *Negligence Claims*

Appellants also argue the district court improperly granted summary judgment because PHS physicians breached certain nondiscretionary medical duties and the government breached nondiscretionary "good samaritan" duties. We agree with the district court's disposition of these issues.

■ Appellants assert that physicians and industrial hygienists involved in the PHS study negligently failed to warn miners of dangers associated with radiation exposure in uranium mines. Had the decision not to warn been a medical judgment, it might not come within the discretionary function exception. *See, e.g., Jackson v. Kelly*, 557 F.2d 735 (10th Cir.1977). There is no evidence in the record of this case which would indicate that the government physicians and hygienists undertook the medical care and treatment of the miners under study. On the contrary, the record reflects that the decision not to advise the miners of the health risks was based on political policy rather than on medical considerations. Thus, the decision not to warn was discretionary. *Varig*, 467 U.S. at 820, 104 S.Ct. at 2767. Furthermore, the discretionary function exception is applicable regardless of whether the physicians and hygienists participated in the creation of that policy decision or merely complied with it.

*Dalehite,* 346 U.S. at 36, 73 S.Ct. at 968. The district court's ruling on this issue was correct.

■ The district court also correctly ruled that the discretionary function exception applies to appellants' "good samaritan" claim. Appellants assert that the exception should not apply because the government undertook a duty to warn the miners of radiation dangers when it began the study. Assuming such a duty was created and the government breached that duty, nothing more would be established than negligence. *See* Restatement (Second) of Torts §§ 323 and 324A (1965). Because the decision not to warn was a discretionary policy decision, if the government was negligent, it would not be liable for such negligence. *Russell v. United States,* 763 F.2d 786, 787 (10th Cir.1985) (following *Hylin v. United States,* 755 F.2d 551 (7th Cir.1985)); *General Public Utilities,* 745 F.2d at 243 n. 6; *Begay v. United States,* 591 F.Supp. 991, 1007 and 1013 (D.Ariz. 1984) (The government's decision not to warn uranium miners of possible radiation injury is a discretionary decision not subject to liability for breach of good samaritan duty.), *aff'd,* 768 F.2d 1059 (9th Cir. 1985).

### C. *Mandatory Duty*

Appellants assert the AEC had a mandatory duty imposed by statute to protect the health of the uranium miners. 42 U.S.C. § 2051 provides in relevant part as follows:

§ 2051. Research assistance

(a) The Commission is directed to exercise its powers in such manner as to insure the continued conduct of research and development and training activities in the fields specified below, by private or public institutions or persons, and to assist in the acquisition of an ever-expanding fund of theoretical and practical knowledge in such fields. To this end the Commission is authorized and directed to make arrangements (including contracts, agreements, and loans) for the

conduct of research and development activities relating to—

. . . . .

(5) the protection of health and the promotion of safety during research and production activities;

. . . . .

(d) The arrangements made pursuant to this section shall contain such provisions (1) to protect health, (2) to minimize danger to life or property, and (3) to require the reporting and to permit the inspection of work performed thereunder, as the Commission may determine.

On appeal, appellants argue that these provisions imposed a mandatory duty on the AEC to establish minimum standards of conduct for the health and safety of uranium miners. It is their position that the duties created by this statute are applicable to the AEC during the mining stage because the extraction of uranium ore may be considered a "production activity" as described in § 2051(a)(5). We agree with the district court that uranium mining is not included within the scope of § 2051(a)(5).

■ Statutory phrases are not construed in isolation; they must be construed in the context of the statute or act as a whole. *United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984); *Pac. Mut. Life Ins. Co. v. Am. Guar. Life Ins.,* 722 F.2d 1498, 1500 (9th Cir.1984). Generally, when the same words are used in different sections of the law, they will be given the same meaning. *Firestone v. Howerton,* 671 F.2d 317, 320 n. 6 (9th Cir.1982). It is apparent from a review of the Atomic Energy Act as a whole, 42 U.S.C. §§ 2011–2296, and § 2051 in particular, that the terms "production activities" were not meant to include the extraction of uranium ore. The act defines the term "produce" and "production facility" with reference to the manufacture of "special nuclear material," not the extraction of "source material" such as uranium. 42 U.S.C. §§ 2014(u) and (v).[4] Nowhere in the Act are the terms "produce" or "pro-

4. The statute defines the words "produce" and "production facility" as follows:

(u) The term "produce" when used in relation to special nuclear material, means (1) to man-

duction" used in the mining context. Those terms are used only in conjunction with post-extraction aspects of the nuclear power industry. Furthermore, the use of the terms "production activities" in the context of § 2051 does not reveal a Congressional intention to regulate uranium mine safety. We note that the other subsections in § 2051 concern post-extraction matters. Summary judgment, therefore, was proper.

### III.

In summary, we conclude that the district court properly granted summary judgment because there are no issues of material fact, the discretionary function exception applies to the negligence claims, and 42 U.S.C. § 2051 does not impose a mandatory duty on the AEC to establish regulations concerning uranium mining safety. The district court's grant of summary judgment is affirmed.

AFFIRMED.

ufacture, make, produce, or refine special nuclear material; (2) to separate special nuclear material from other substances in which such material may be contained; or (3) to make or to produce new special nuclear material.

(v) The term "production facility" means (1) any equipment or device determined by rule of the Commission to be capable of the production of special nuclear material in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public; or (2) any important component part especially designed for such equipment or device as determined by the Commission.