Randall Wayne REDMON, By and Through his next friend and father, Ronald REDMON, and James Stanley Ewing and Scott Tyler Ewing, By and Through their next friend, Lewis Johnson, as Personal Representative for the Estate of Judith Ewing, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 89–8050.

United States Court of Appeals, Tenth Circuit.

June 3, 1991.

**1152**

Les Bowron (and Michael D. Zwickl of Beech Street Law Offices, Casper, Wyo., John R. Hursh of Hursh & Donohoe, Riverton, Wyoming, with him on the brief), for Plaintiffs–Appellants.

Wendy L. Rome, Trial Atty. (and Stuart E. Schiffer, Acting Asst. Atty. Gen., Department of Justice, Civ.Div., Washington, D.C., Richard A. Stacy, U.S. Atty., Cheyenne, Wyo., with her on the brief), for defendant-appellee.

Before BARRETT, BALDOCK and EBEL, Circuit Judges.

BALDOCK, Circuit Judge.

On September 2, 1985, Dr. Charles Ewing piloted his twin-engine Piper Seneca II aircraft into a severe thunderstorm over the Ogden, Utah, area. All on board, including Dr. Ewing's wife, Judith, were killed in the ensuing crash. Surviving family members, along with the personal representative of Judith Ewing's estate, brought this wrongful death action against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–80. Plaintiffs-appellants allege that the Federal Aviation Administration (FAA)

and an FAA flight safety inspector were negligent in (1) certifying Dr. Ewing to fly multiengine aircraft in instrument flight conditions and (2) failing to initiate enforcement proceedings against Dr. Ewing. The district court dismissed the action for lack of subject matter jurisdiction, finding that plaintiffs' claims were barred by the "discretionary function" exception to the FTCA. 710 F.Supp. 765. *See* 28 U.S.C. § 2680(a). Plaintiffs appeal, contending that the district court erred in applying the "discretionary function" exception and in dismissing the plaintiffs' complaint under Fed.R.Civ.P. 12(b)(1). We remand to the district court for entry of summary judgment in favor of the government. *See* Fed.R.Civ.P. 56(c) & 58.

## I. Background

The Federal Aviation Act of 1958 empowers the FAA to issue "airman certificates specifying the capacity in which the holders thereof are authorized to serve as airmen...." 49 U.S.C.App. § 1422(a). Pursuant to this authority, the FAA issues several types of certificates with accompanying ratings. *See* 14 C.F.R. § 61.5 (1989). The ratings relevant in this case indicate the classes of aircraft and weather conditions in which a pilot is qualified to operate. On the date of the crash, Dr. Ewing held a private pilot certificate with a multiengine land airplane class rating and an instrument flight rules rating (IFR rating). *See Id.* This meant that the FAA, through written tests and practical flight tests administered by FAA flight examiners, had certified Dr. Ewing as qualified to operate a multiengine airplane with passengers over land in instrument flight conditions (IFR conditions). IFR weather conditions exist when the pilot cannot visually see and avoid other aircraft and cannot maintain visual contact with the ground; he must operate the aircraft by reference to flight instruments. *See* 14 C.F.R. §§ 91.167–91.-193 (1989) (instrument flight rules).

Dr. Ewing obtained his private pilot certificate on October 26, 1983. At that time, he was rated to operate single-engine aircraft in visual flight rules conditions only

(VFR conditions). *See* 14 C.F.R. §§ 91.-151–91.159 (1989) (visual flight rules). On August 4, 1984, after passing the written test months earlier, Dr. Ewing passed the practical flight test for an IFR rating. Tom Rickert, an FAA flight examiner in Casper, Wyoming, administered the practical flight test. Soon thereafter, Dr. Ewing began training for a multiengine land aircraft class rating. At the time Dr. Ewing began his multiengine training, August 1984, a pilot with a single-engine IFR rating could carry his IFR rating to a multiengine rating without demonstrating IFR flight skills in a multiengine aircraft. On October 1, 1984, however, the FAA implemented a new policy which required all pilots seeking multiengine IFR ratings to demonstrate IFR flight skills. A grace period was allowed for pilots such as Dr. Ewing who had commenced multiengine training prior to the implementation of the new rule and who had applied for a multiengine rating before December 1, 1984.

In October 1984, Les Larsen, another FAA flight examiner, administered the multiengine practical flight test for Dr. Ewing. Larsen, unaware of the FAA grace period under the new rule, required Dr. Ewing to demonstrate IFR flight skills. Dr. Ewing, in spite of his IFR rating in single-engine aircraft, was unable to operate the multiengine aircraft successfully during this portion of the test. Consequently, Larsen issued a temporary airman certificate reading "multiengine airplane—VFR only." Larsen did not record this incident in Dr. Ewing's flight logbook.

In November Dr. Ewing asked Paul Hinman, an FAA aviation safety inspector, to give him a practical flight test to remove the "VFR–only" restriction from his multiengine rating. Hinman, upon discovering that Dr. Ewing was already IFR rated and was within the FAA's grace period, removed the restriction without administering a formal practical flight test. Although he did not administer a formal practical flight test, Hinman gave Dr. Ewing a courtesy check ride—a training exercise for the benefit of Dr. Ewing. Dr. Ewing, as a result of further training after the flight with Larsen, demonstrated instrument flight competence during this courtesy flight.

Over the following ten months, Dr. Ewing accumulated over 127 hours of flying time in his multiengine Piper Seneca II. Twenty-four of the hours were logged as instrument flight. On the day of the crash, September 2, 1985, Dr. Ewing received a weather briefing detailing severe thunderstorms in the Ogden, Utah area. Given this knowledge combined with his training, experience and testing, he filed an IFR flight plan directly through the thunderstorm area. Unfortunately he was unable to circumnavigate the thunderstorms. As a result, the airplane crashed and Dr. Ewing was killed along with all of his passengers.

Pursuant to the FTCA, plaintiffs assert two theories of liability: (1) Hinman's negligent removal of the "VFR–only" restriction from Dr. Ewing's multiengine rating was the proximate cause of the crash; or (2) Hinman's negligent failure to initiate an enforcement action against Dr. Ewing was the proximate cause of the crash.

## II. Discretionary Function Exception

The FTCA provides a limited waiver of the sovereign immunity of the federal government. *See* 28 U.S.C. § 1346(b). Excepted are "discretionary functions." Section 2680(a) provides that sovereign immunity will not be waived for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." This exception to the FTCA "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984). In *Varig* the plaintiffs were seeking damages from the government for negligence arising out of the FAA's certification process for the de-

sign and manufacture of aircraft. The Court framed the discretionary function inquiry as "whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *Id.* at 813, 104 S.Ct. at 2764. In defining the "nature and quality" of protected governmental actions, the Court stated that Congress crafted the exception "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 814, 104 S.Ct. at 2765.

The *Varig* Court held that the FAA's aircraft certification process was inherently discretionary in "nature and quality." *Id.* at 819, 104 S.Ct. at 2767. Congress had directed the Secretary of Transportation to promulgate airplane certification regulations and procedures which would promote air safety. *Id.* (citing 49 U.S.C.App. § 1421(a)(1), (a)(3)(A)). In furthering Congress' goal of air safety, the Secretary was required to balance the safety goal against "the reality of finite agency resources" and promulgate reasonable regulations. *Id.* at 820, 104 S.Ct. at 2767. The Court held that this was precisely the type of regulatory activity which the discretionary function exception was designed to shield. *Id.* Futhermore, the Court held that the exception shielded "the acts of FAA employees in executing the [air certification compliance] program in accordance with agency directives.... " *Id.*

In *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988),

the Court clarified the discretionary function exception, holding that it protects only government "conduct that involves the permissible exercise of policy judgment," not all regulatory acts. *Id.* at 538–39, 108 S.Ct. at 1959–60 (citing *Varig*, 467 U.S. at 820, 104 S.Ct. at 2767; *Rayonier, Inc. v. United States*, 352 U.S. 315, 318–19, 77 S.Ct. 374, 376–77, 1 L.Ed.2d 354 (1957); *Indian Towing Co. v. United States*, 350 U.S. 61, 64–65, 76 S.Ct. 122, 124–125, 100 L.Ed. 48 (1955); *Dalehite v. United States*, 346 U.S. 15, 33–34, 73 S.Ct. 956, 966–967, 97 L.Ed. 1427 (1953)). The court found some of the claims in the *Berkovitz* case to be outside the exception because agency employees violated "specific mandatory" statutory and regulatory directives which left no room for discretion. 486 U.S. at 542–43, 108 S.Ct. at 1961–62. The Court, however, left in tact the broad scope of the discretionary function exception. This is evident when considering the Court's latest pronouncement on the issue, *United States v. Gaubert*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). The *Gaubert* Court held that the discretionary function exception affords protection for "day-to-day" operational decisions which are policy-based. *Id.* 111 S.Ct. at 1275–76. The Court stated that "[i]f the routine or frequent nature of a decision were sufficient to remove an otherwise discretionary act from the scope of the exception, then countless policy-based decisions by regulators exercising day-to-day supervisory authority would be actionable. This is not the rule of our cases." *Id.* at 1279.[1]

---

1. In keeping with the *Varig* line of cases, we have reaffirmed the broad scope of the discretionary function exception several times. *See e.g., Creek Nation Indian Housing Auth. v. United States*, 905 F.2d 312 (10th Cir.1990) (government selection of bomb design and inspection of explosive transport truck discretionary); *Allen v. United States*, 816 F.2d 1417 (10th Cir. 1987) (Atomic Energy Commission monitoring and planning of public information programs regarding open-air testing of atomic weapons discretionary), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988); *Barnson v. United States*, 816 F.2d 549 (10th Cir.) (Atomic Energy Commission and Public Health Service decisions not to warn miners of radiation hazards and not to regulate safety and health con-

cerns of miners discretionary), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987); *Weiss v. United States*, 787 F.2d 518 (10th Cir. 1986) (National Oceanic and Atmospheric Administration decision not to depict aerial cable on sectional aeronautical charts was nonmandatory and therefore discretionary), *appeal after remand,* 889 F.2d 937 (10th Cir.1989) (discretionary function exception applied to alternate theory of liability); *Wendler v. United States*, 782 F.2d 853 (10th Cir.1985) (FAA suspension of pilot's certificate and delay in reissuance discretionary); *Taitt v. United States*, 770 F.2d 890 (10th Cir.1985) (admission of a convicted felon into witness protection program and failure to notify state law officers of his background and record, absent mandatory statutes or regula-

## A. *Summary Judgment*

■ The district court, upon a motion to dismiss under Fed.R.Civ.P. 12(b)(6) or summary judgment under Rule 56, dismissed the case pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. We review de novo the district court's treatment of the government's motion. *See Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Plaintiffs, citing *Wheeler*, contend that the court committed reversible error in dismissing for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because the jurisdictional issue and the merits are intertwined. *See Wheeler*, 825 F.2d at 259. Rather, plaintiffs assert that the court should have treated the motion as a Rule 56 motion for summary judgment. Under Rule 56, plaintiffs contend that summary judgment for the government is precluded because material facts are in dispute.

Insofar as the appropriate federal rule, we agree with the plaintiffs that Rule 56 governs because the determination of whether the FTCA excepts the government's actions from its waiver of sovereign immunity involves both jurisdictional and merits issues. In *Wheeler*, we held that Rule 56 rather than Rule 12(b)(1) should be used in such instances where "the jurisdictional question is intertwined with the merits of the case...." *Id.* at 259. Exercising our plenary power, we treat the government's motion as a motion for summary judgment under Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Factual disputes about immaterial matters are irrelevant to a summary judgment determination. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We view the evidence in a light most favorable to the nonmovant; however, it is not enough that the nonmovant's evidence be "merely colorable" or anything short of "significantly probative." *Id.* at 249–50, 106 S.Ct. at 2511. The movant need only point to those portions of the record which demonstrate an absence of a genuine issue of material fact given the relevant substantive law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In this case, if the government has established that it is entitled to judgment as a matter of law given the operative facts contained in the documentary evidence, summary judgment will lie. *See Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511. *See also Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'") (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

. .

## B. *Disposition*

■ Plaintiffs contend that flight safety inspector Hinman negligently removed the "VFR–only" restriction from Dr. Ewing's certificate. This argument, however, cannot center on Hinman's negligence, for Hinman simply followed the clear directive from the FAA which implemented a grace period for single-engine IFR rated pilots to carry forward their IFR rating to a multiengine rating without an IFR practical flight test. The Court clearly stated in *Varig* that the actions of agency employees in furtherance of agency directives are shielded from tort liability when the agency directive stems from a discretionary function. 467 U.S. at 820, 104 S.Ct. at 2767.

tions, discretionary); *Russell v. United States*, 763 F.2d 786 (10th Cir.1985) (Mine Safety and Health Association inspection of coal mine discretionary). *Cf. Boyd v. United States*, 881 F.2d 895, 898 (10th Cir.1989) (government failure to warn of swimming dangers did not "implicate any social, economic, or political policy judg-

ments with which the discretionary function exception properly is concerned"); *Ayala v. Joy Mfg. Co.*, 877 F.2d 846 (10th Cir.1989) (discretionary function exception inapplicable because Mine Safety Health Administration inspector violated specific mandatory regulatory directives).

More recently, the Court stated that "if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *United States v. Gaubert,* — U.S. —, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991) (citing *Dalehite v. United States,* 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953)).

Our inquiry therefore must center on the FAA directive at issue rather than on Hinman. Although plaintiffs' counsel attempt to argue the contrary, there is little doubt that the FAA's decision to allow single-engine IFR rated pilots to carry over their IFR rating to a multiengine rating without a practical flight test falls squarely within the discretionary function exception. Likewise, after the rule change, the FAA's implementation of a grace period for pilots who had already commenced multiengine training fit within the exception. Both regulatory actions involved discretionary policy judgments. 49 U.S.C.App. § 1421(a) empowers the Secretary of Transportation "to issue airman certificates specifying the capacity in which the holders thereof are authorized to serve as airmen...." In issuing such certificates, the Secretary may impose "such terms, conditions, and limitations as to ... periodic or special examinations ... and other matters as the Secretary of Transportation may determine to be necessary to assure safety in air commerce." 49 U.S.C.App. § 1422(b)(1). Clearly this language implies discretion on the part of the Secretary to promulgate regulations and procedures. In promulgating the regulations, the Secretary inherently must balance the ultimate goal of air safety against "the reality of finite agency resources." *Varig,* 467 U.S. at 820, 104 S.Ct. at 2768. As in *Varig,* this case involves the type of governmental action that Congress intended to shield from "judicial second-guessing."

■ The issue does not, as plaintiffs argue, involve "specific mandatory" statutory or regulatory directives of the type that allegedly were violated by the government in *Berkovitz,* 486 U.S. at 542–45, 108 S.Ct. at 1961–63. *Berkovitz* involved allegations that the National Institutes of Health and the Food and Drug Administration negligently licensed a manufacturer to produce a Polio vaccine and wrongfully approved the release of a particular lot of the vaccine. The relevant statutes and regulations imposed "specific mandatory" duties on the agencies before licensing and approving polio vaccines. For example, the Public Health Service Act required the agency to receive and evaluate test data from the manufacturer before issuing a license. *Id.* at 541–42, 108 S.Ct. at 1961–62 (citing 42 U.S.C. § 262(d) and 42 C.F.R. § 73.5(a) (Supp.1964)). The plaintiffs' complaint survived the government's motion to dismiss because plaintiffs alleged that the government violated such nondiscretionary licensing and approval provisions. No "specific mandatory" provisions were at issue in the FAA's decision to implement the grace period for pilots such as Dr. Ewing, and flight safety inspector Hinman did not violate any "specific mandatory" nondiscretionary provision when he removed the "VFR–only" restriction from Dr. Ewing's certificate. Accordingly, we hold that plaintiffs' claims regarding the removal of the "VFR–only" restriction from Dr. Ewing's certificate are barred as a matter of law by the discretionary function exception to the FTCA.

Plaintiffs next argue that flight safety inspector Hinman violated "specific mandatory" FAA regulations in failing to investigate and take enforcement action against Dr. Ewing. The Federal Aviation Act provides:

The Secretary of Transportation *may,* from time to time, ... reexamine any civil airman. If, as a result of any such ... reexamination, or if, as a result of any other investigation made by the Secretary of Transportation, he determines that safety in air commerce or air transportation and the public interest requires, the Secretary of Transportation *may* issue an order amending, modifying, suspending, or revoking, in whole or in part, any ... airman certificate....

49 U.S.C.App. § 1429(a) (emphasis supplied). *See also* 14 C.F.R. § 13.1 (1988) (upon report of violation, nature and type of FAA investigation or enforcement action discretionary); 14 C.F.R. §§ 13.3 & 13.5 (1989) (FAA investigations discretionary in nature); 14 C.F.R. § 13.19 (1989) (FAA "re-examin[ation] [of] any civil airman" discretionary). Plaintiffs contend that the statute and regulations impose a "specific mandatory" duty, of the *Berkovitz* type, to investigate and take an enforcement action against an incompetent pilot; however, it is apparent from the discretionary tone of the language of the statute and regulations that the decision to investigate and take enforcement action against a particular airman is a discretionary function. As with the certification procedures mentioned above, the FAA inherently must balance the ultimate goal of air safety against "the reality of finite agency resources." *Varig*, 467 U.S. at 820, 104 S.Ct. at 2768.

Plaintiffs contend, however, that a factual dispute exists regarding what Hinman knew about Dr. Ewing's flying experience. Plaintiffs argue that "[t]his ultimate fact issue regarding Hinman's negligence removes, without question, this case from one which would be subject to dismissal pursuant to F.R.C.P. 56." Appellant's Brief at 44. With this statement, plaintiffs miss entirely the point of the discretionary function exception. When the government performs a discretionary function, the exception to the FTCA applies regardless of "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The question of Hinman's negligence, therefore, is irrelevant. Only material factual disputes will preclude summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this case there are no material factual disputes and the government is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). We therefore remand to the district court for entry of summary judgment in accordance with Fed. R.Civ.P. 56(c) and 58.