Octavio JIMENEZ–NIEVES, et al.,
Plaintiffs, Appellants,

v.

UNITED STATES of America, et al.,
Defendants, Appellees.

No. 81–1534.

United States Court of Appeals,
First Circuit.

Argued Feb. 4, 1982.

Decided June 22, 1982.

Blas C. Herrero, Jr., Hato Rey, P. R., for plaintiffs, appellants.

Anne Buxton Sobol, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D. C., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., J. Paul McGrath, Asst. Atty. Gen., Robert S. Greenspan and Al J. Daniel, Jr., Attys., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D. C., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, GIBSON,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

Octavio Jimenez Nieves, on behalf of himself and his family, sued the United States for damages suffered when the Social Security Administration stopped payment on benefit checks which he had negotiated for his mother, Cecilia Nieves Colon, throughout most of the year 1975. The SSA concedes that the checks were dishonored because of a "typographical" error made by an SSA keypuncher who wrongly entered a notation that Cecilia had died on March 26, 1975, instead of the correct date of March 26, 1976. The plaintiff alleges that, as a result of this error, (a) several banks required him to pay back money that they had previously given him (presumably when he cashed the checks that his mother had endorsed); (b) his credit rating was seriously affected; (c) he had to borrow money from friends and acquaintances to repay the banks; (d) the Secret Service began to investigate him for fraud, making constant inquiries of his employer; (e) he was humiliated and suffered the stress of severe financial problems, resulting in great physical, mental, and emotional damage, affecting him and his entire family. All of this, says Jimenez Nieves, constitutes a tort under the law of Puerto Rico.[1] He seeks recovery of damages from the United States under the Federal Tort Claims Act. 28 U.S.C. §§ 1346, 2671 et seq. (1976).

The United States moved to dismiss the complaint on grounds that the action is barred by (1) 42 U.S.C. § 405(h) (1976), restricting court jurisdiction in social security cases, and (2) 28 U.S.C. § 2680(h) (1976), which denies consent to sue the United States on claims arising out of "libel, slander, misrepresentation, deceit or interference with contract rights. . . ." The district court held that plaintiff's claim was indeed a claim of "misrepresentation," and it therefore dismissed the complaint. While we agree that dismissal of most of the claims in the complaint was proper, we believe that the court's ground for dismissal was not.

■ 1. We turn first to the Government's "jurisdictional" argument. That argument is based on a provision in Subchapter II of the Social Security Act—a subchapter entitled "Federal Old-Age, Survivors and Disability Insurance Benefits." The provision at issue states in relevant part:

No finding of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). The Government concludes that plaintiff's exclusive remedy— the "review . . . herein provided"—lies under 42 U.S.C. § 405(g), which, in effect, provides for court review of an administrative record, using the "substantial evidence" standard of the Administrative Procedure Act, 5 U.S.C. § 706 (1976). The principal support the Government offers for this claim is a quotation from *Weinberger v. Salfi*, 422 U.S. 749, 760, 95 S.Ct. 2457, 2464, 45 L.Ed.2d 522 (1975) (stating that it would be "fruitless to argue that this action does not also arise under the Social Security Act"). The Government also asserts that, otherwise, "virtually any error in the administration of the Social Security Act

---

* Of the Eighth Circuit, sitting by designation.

1. Claims under the Federal Tort Claims Act are determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1976). In this case, the claims would arise under the Civil Code of Puerto Rico:

A person who by act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability but entails a reduction of the indemnity. Art. 1802, 31 L.P.R.A. § 5141.

could be translated into a tort action against the United States." [2]

We find the Government's position unacceptable. The language of § 405(h) applies only to a "claim arising under this subchapter." An action for damages based on a tort committed in the course of administering the Social Security Act does not arise "under" a "subchapter" that provides for the payment of social security benefits any more than a tort claim based on a negligently driven postal truck arises under the postal acts. The Government quotes *Weinberger v. Salfi* out of context, for the plaintiffs in that case sought social security *benefits* (although their argument rested on constitutional rather than statutory grounds), not tort damages. Moreover, we do not accept the Government's suggestion that, unless tort claims are viewed as "arising under" the benefits subchapter, future claimants will simply transform claims for benefits into tort actions. The action here is not one for benefits or for "negligent denial of benefits;" it thus supplies no precedent for any wholesale transformation of "benefit claims" into "tort claims."

More importantly, however, to accept the Government's argument would imply that tort claims against the Government in general arise not only under the Federal Tort Claims Act and state law, but also under whatever statute the defendant agency happens to be administering. Such statutes may well have jurisdictional limitations or unique procedural requirements, as, for example, does the Veterans' Benefits Act, which forbids court review of any administrative decision under the Act.[3] Thus, the Government's argument, if accepted, would

replace a reasonably uniform and clear system for handling tort suits against the government (embodied in the Tort Claims Act) with a hodge-podge of procedural requirements, drawn from a host of different statutes, not necessarily drafted with tort suits in mind. In this case, for example, the "administrative hearing" procedures of § 405(g) are well suited to the decision of benefit claims. But they are anomalous if applied to tort claims. Tort claims are ordinarily presented to a district court for *de novo* decision within six months of an agency decision. 28 U.S.C. § 2675. By contrast, a claim that reaches the district court via the administrative hearings of § 405(g) and (h), is subject to a different time limitation and does not receive a *de novo* court hearing. If § 405(g) and (h) apply, the agency would enjoy an unusual amount of discretion to decide the facts of the tort claim against it. We are aware of no reason why so totally different a system for resolving tort claims against the government should apply to claims that happen to grow out of administration of the Social Security Act. The Government offers us no evidence that such was the intent of Congress, here or elsewhere, nor does it explain how, or why, that result would be desirable. Thus, we find its "jurisdictional" argument without merit.

█ 2. We also believe that the district court erred in finding plaintiff's claim covered by the "misrepresentation" exception to the Federal Tort Claims Act. In determining the proper scope of the § 2680(h) exceptions, we must turn to the "traditional

---

2. The Government also refers us to three district court cases in which it is said that the bar of § 405(h) was accepted. Only one of those cases, *Muenich v. United States*, 410 F.Supp. 944 (N.D.Ind.1976), is reported. That case is clearly distinguishable as the amounts claimed in that case were attorney's fees provided by 42 U.S.C. § 406(b), a provision of the Social Security Act, and therefore the claim obviously arose under the subchapter. Neither of the other cases, *Parmenter v. United States*, Civil No. 80–3009 (C.D.Cal. Jan. 31, 1981), and *Barton v. Harris*, Civil No. 80–18 (S.D.Tex. May 13, 1980), is sufficiently detailed in either facts or

legal reasoning to be useful as precedent—no doubt this is why the courts issued them in unpublished form.

3. The Veterans' Benefits Act provides that "the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise." 38 U.S.C. § 211(a) (1976).

4

and commonly understood definition of the tort." *United States v. Neustadt*, 366 U.S. 696, 706, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1961). To accomplish this task, we refer, as did the Supreme Court in *Neustadt*, to the Restatement (Second) of Torts, and to federal cases construing the exception.

The district court based its holding that this was a "misrepresentation" case upon the fact that the harm to the plaintiff was caused by a false statement, namely, the keypunching error which resulted in entering into the social security records the "fact" that plaintiff's mother died in 1975, rather than 1976. But, *this* false statement did not *directly* injure the plaintiff; it was simply the internal bureaucratic cause of other agency action—dishonoring the checks. It was failure to honor the checks that hurt the plaintiff and about which he now complains.

If the fact that a tortious act is *caused* by a false statement were sufficient to bring it within the Federal Tort Claims Act's misrepresentation exception, the results would be bizarre. An injured pedestrian could not recover if, for example, the government truck driver ran over him because his co-worker falsely told him that the light was green. Nor could a homeowner recover should a government demolition crew wreck his house after being sent to the wrong address. Such cases are not, however, typically considered as examples of the separate tort category of "misrepresentation." Rather, the Restatement, noting that "misrepresentation runs all through the law of torts as a method of accomplishing various types of [other] tortious conduct," adds that such cases are "usually grouped under categories of their own." *Id.*, ch. 22, scope note at 54. Thus, inducing a person to eat chocolates that are poisoned is considered a "battery," restraining a person by falsely claiming legal authority to arrest him is considered "false imprisonment," and causing an accident by signalling a wrong turn is treated as ordinary negligence. *Id.* Dean Prosser adds that such "misrepresentation has been merged to such an extent with other kinds of misconduct that neither the courts nor legal writers have found

occasion to regard it as a separate basis of liability." W. Prosser, *Torts* 684 (4th ed. 1971).

Insofar as "misrepresentation" is viewed as a separate, independent tort, it involves activity different from that at issue here. The tort arose out of "deceit," initially in commercial contexts, where one party to a business transaction would falsely represent to another facts likely to influence the other's decision. While the Restatement indicates that the tort of misrepresentation involves the dissemination of information generally and not only in commercial contexts, it makes clear that one essential element of misrepresentation remains reliance *by the plaintiff himself* upon the false information that has been provided. Restatement, *supra*, § 525 at 55, § 537 at 80, § 552 at 126, and § 552C at 141. Even when the misrepresentation is made to a third party, the plaintiff must have suffered damages because *he* himself acts in "justifiable reliance upon ... the misrepresentation." *Id.*, § 533 at 72–73. (Emphasis added.) Similarly, one who is negligent in making a misrepresentation as to information "for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by *their* justifiable reliance upon the information...." *Id.*, § 552 at 126. (Emphasis added.) Dean Prosser, too, lists "[j]ustifiable reliance upon the representation on the part of the plaintiff, in taking action, or refraining from it," as an essential element. Prosser, *supra*, at 686.

The requirement that the plaintiff himself has relied upon the false information makes sense if one sees the traditional tort as protecting a person's interest in obtaining true information (from those with a duty to provide it) when making up his mind about an important matter. The cases support such a requirement. Thus, the cases cited by the Government and the district court finding "misrepresentation" for Tort Claims Act purposes all involve—at a minimum—the core element of reliance by the plaintiff himself upon false information. In *Neustadt*, for example, the Feder-

al Housing Administration falsely stated that a house was worth $27,000; the plaintiff, relying on this information, bought the house which was later discovered to have severe structural defects. The Court held that this was "misrepresentation" even if the Government's conduct was negligent, not intentional. Similarly, in *Fitch v. United States*, 513 F.2d 1013 (6th Cir.), *cert. denied*, 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95 (1975), the Sixth Circuit found that a government "misrepresentation" led the plaintiff to enlist in the Army, and it also explicitly noted that plaintiff, when signing up, relied upon the Army's false statement that he had a low draft number. Conversely, courts have held that a suit against a doctor who wrongly diagnoses a plaintiff's condition falls outside the "misrepresentation" exception if the tort is based upon improper treatment that was *caused by* the false diagnosis. *Beech v. United States*, 345 F.2d 872 (5th Cir. 1965). A suit claiming a government trespass is also outside the exception where the trespass is caused by the mistaken belief of the *trespassing officers* about the rights they had received in a prior conveyance. *Anderson v. United States*, 259 F.Supp. 148 (E.D. Pa.1966). *Compare Rey v. United States*, 484 F.2d 45 (5th Cir. 1973) (suit barred where plaintiff, relying on incorrect information from Department of Agriculture veterinarian that his hogs had cholera, killed his own livestock), *with Ware v. United States*, 626 F.2d 1278 (5th Cir. 1980) (suit not barred where government agents misdiagnosed cattle as tubercular and killed the cattle themselves). *See also Coastwise Packet Co. v. United States*, 398 F.2d 77, 78–79 (1st Cir. 1968) (statements made to plaintiff) (a case which is perhaps better viewed as an instance of defamation, *see* p. 6 *infra*).

Additional support can be found for this view of the underlying tort in those cases which have refused to bar suits against the government when the false statement—though made directly to plaintiff—was "operational," consisting, for example, of faulty aviation charts. *Sullivan v. United States*, 299 F.Supp. 621 (N.D.Ala.1968),

*aff'd*, 411 F.2d 794 (5th Cir. 1969) (*per curiam*). In such cases, the false statement not only conveys information but also operates as an instruction or a direction, taking the case some distance from the "providing information for making up one's mind" rationale. *Compare Sullivan v. United States, supra; Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967) (suit not barred where air controllers did not supply weather information that was up to date); *and United Air Lines, Inc. v. Wiener*, 335 F.2d 379 (9th Cir.), *cert. denied*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1974) (suit not barred where air controllers negligently fail to warn airline of hazardous flight training near airplane's route), *with Marival, Inc. v. Planes, Inc.*, 306 F.Supp. 855 (N.D.Ga.1969) (suit barred where plaintiff relied on Federal Aviation Administration's certification of airworthiness when buying plane). *See also United States v. Neustadt*, 366 U.S. at 711 n.26, 81 S.Ct. at 1302 n.26 (Court states that a suit based upon a driver's misleading hand signal is not a suit based upon misrepresentation). *But see Neal v. Bergland*, 646 F.2d 1178 (6th Cir. 1981), *cert. granted sub nom. Block v. Neal*, —— U.S. ——, 102 S.Ct. 2267, 73 L.Ed.2d 1282 (1982).

We need not, however, explore the intricacies or the rationale of these "operational statement" cases. Regardless of whether one views the false statement at issue here as, in essence, an instruction or direction to those within the Social Security Administration, that statement was not made to the plaintiff and he did not rely upon it. That is sufficient to remove this case from the core, or traditional, view of "misrepresentation" as a separate tort. Moreover, all the cases here cited suggest that the word "misrepresentation" in the Tort Claims Act should be confined to its traditional, or core, meaning as a separate tort. And, we can discern no congressional purpose that might have been served in defining it more broadly, to include false statements that are happenstance causal elements of other torts. Thus, the "misrepresentation" exception does not apply.

■ 3. While the false date of death statement does not bring plaintiff's claims within any of the Federal Tort Claims Act's exceptions, several of plaintiff's claims are nonetheless barred by the exception for "libel" and "slander." 28 U.S.C. § 2680(h). In examining a complaint we are bound to look beyond the literal meaning of the language used to ascertain the real cause of the complaint. *Fitch v. United States*, 513 F.2d at 1015; *Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959). Much of the plaintiff's complaint is that dishonoring the checks harmed him because it injured his reputation in the eyes of third parties—hence, they would not extend him credit, ridiculed him and his family, and so forth. The Federal Tort Claims Act, however, explicitly exempts "libel" and "slander"—what amounts to "defamation," Prosser, *supra*, § 111 at 737—from the claims to which the United States grants consent to be sued. And, plaintiff's claim fits " 'the traditional and commonly understood legal definition' of the tort of defamation." *Hoesl v. United States*, 451 F.Supp. 1170, 1175 (N.D.Cal.1978), *aff'd*, 629 F.2d 586 (9th Cir. 1980) (*per curiam*), *quoting Neustadt*, 366 U.S. at 706, 81 S.Ct. at 1300.

To create liability for defamation there must be "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence; and (d) [certain types of harm]." Restatement, *supra*, § 558 at 155. A "statement" simply means a "communication" that tends "to harm the reputation of another." *Id.*, § 559 at 156. And, as the Restatement's note makes clear, "communication" is interpreted broadly "to denote the fact that one person has brought an idea to the perception of another." *Id.*, Comment (a) at 156. In fact, even an activity, such as "shadowing" someone can count as a "communication" if that activity communicates an idea

to a third party. *Id.*, Comment at 156, 170, 180.

■ All of plaintiff's claims which involve the injury to his reputation and the consequent harm suffered by him when the Social Security Administration's actions in dishonoring the checks implicitly communicated defamatory statements about him are therefore barred by the Federal Tort Claims Act. Such claims resound in the heartland of the tort of defamation: the injury is to reputation; the conduct is the communication of an idea, either implicitly or explicitly. *Cf. Maymi v. Banco Popular de Puerto Rico*, 63 P.R.R. 515 (1944). The only contrary authority we can find is *Quinones v. United States*, 492 F.2d 1269 (3d Cir. 1974), in which the Third Circuit allowed an action against the United States based on failure to use due care in maintaining personnel records. The court held that the claim was not one for defamation, although the injury was to reputation, because "negligence is conceptually distinct from defamation," and because "the negligence alleged here was distinct from ... mere writing or speaking." *Id.* at 1281. However, we decline to follow the Third Circuit in this case because we do not believe that the fact that a defamation is caused negligently makes it any the less a defamation. Indeed, it is commonly held that defamation can be caused by negligence. Restatement, *supra*, § 580B at 221–22.[4] Thus, we believe that plaintiff's complaint—insofar as it alleges harm caused by an injury to his reputation—must be dismissed.

4. We note that there are several paragraphs of the complaint which appear to allege some sort of direct injury to the plaintiff that does not depend upon an injury to reputation. Insofar as they allege injury caused by the Government's criminal investigation, we suspect that they fall within the exemption to the Tort Claims

4. We are also uncertain about the *Quinones* court's view that the defamation exception reflected only heightened congressional desire to free government officials to write and speak as they choose, rather than a diminished congressional desire to protect reputational interests.

But, in any event, even if it was Congress's intent to protect official speech activity, the conduct at issue in this case must have consisted of a form of speech activity that explicitly or implicitly communicated negative propositions to third parties.

Act for "discretionary" actions. 28 U.S.C. § 2680(a) (1976). Insofar as they claim direct (nonreputational) injury caused by the Government's failure to honor its checks, we are uncertain how they set out the elements of a tort under the laws of Puerto Rico. Nonetheless, these issues have not been argued to us and we believe plaintiff should have an opportunity at least to make an argument in support of the existence of such theories. Therefore, we vacate the decision of the district court and remand for further proceedings not inconsistent with this opinion.

*Vacated and Remanded.*