978 F.2d 602
 24 Fed.R.Serv.3d 153
 Dale COOPER, doing business as Cooper Livestock Marketing
Agents, Inc., Plaintiff-Appellant/Cross-Appellee,
v.
AMERICAN AUTOMOBILE INSURANCE COMPANY; United States of
America, ex rel. United States Department of
Agriculture, Packers and Stockyards
Administration,
Defendants-
Appellees/Cross-
Appellants,
v.
Kathy Diane COOPER; Robert M. Rodenberger, Jr.; Karen Sue
Rodenberger; Donald Blake; Flora Blake;
Clarence John Cooper; Norma Cooper,
Third-Party Defendants-Appellees.
 Nos. 90-6124, 90-6127.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 30, 1992.
 
 Robert H. Mitchell and Newell E. Wright, Jr. of Robert H. Mitchell & Assoc., Oklahoma City, Okl., for plaintiff-appellant/cross-appellee.
 John B. Hayes of Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., for defendant-appellee/cross-appellant American Auto. Ins. Co.
 Warren D. Majors, Asst. U.S. Atty., Oklahoma City, Okl. (Timothy D. Leonard, U.S. Atty., and Roger Griffith, Asst. U.S. Atty., Oklahoma City, Okl., on the brief), for defendant-appellee/cross-appellant U.S. ex rel. U.S. Dept. of Agriculture, Packers and Stockyards Admin.
 O. Clifton Gooding and James L. Menzer of Gooding & Menzer, P.C., Oklahoma City, Okl., on the brief for third-party defendants-appellees Robert M. Rodenberger, Jr., Karen Sue Rodenberger, Donald Blake and Flora Blake.
 Before McKAY, Chief Judge, HOLLOWAY, Circuit Judge, and WINDER,* District Judge.
 HOLLOWAY, Circuit Judge.
 
 
 1
 No. 90-6124 is an appeal by plaintiffs Cooper Livestock Marketing Agents, Inc. ("CLMA") and Dale Cooper (together "Cooper") from a decision of the United States District Court, Western District of Oklahoma: (1) granting summary judgment to defendant American Automobile Insurance Co. ("AAIC") on Cooper's claim of wrongful termination of surety bonds; and (2) dismissing Cooper's claims of negligence against codefendants United States Department of Agriculture ("USDA") and the Packers and Stockyards Administration ("PSA"). AAIC has cross-appealed in No. 90-6127 the district court's grant of summary judgment to Cooper and the third-party defendants Kathy and Norma Cooper, Robert and Karen Rodenberger, Donald and Flora Blake (collectively, "third-party defendants") on AAIC's claim for indemnification for costs and expenses incurred in defending this litigation.I. THE FACTUAL AND PROCEDURAL BACKGROUND
 
 
 2
 * Over a three week period in late April and early May of 1987, Raymond (or Ricky) Hutson purchased approximately 967 head of cattle from W. Raymond Brown d/b/a Comanche Livestock Auction ("Comanche"), Arrowhead Livestock Auction Sales Co. ("Arrowhead"), and Bowie Livestock Commission, Inc. ("Bowie"). Hutson paid for all of these purchases with checks totalling approximately $400,000, and all of the checks were returned for insufficient funds. On May 27, 1987, Arrowhead, Bowie, and Comanche, believing that Hutson had made the purchases on behalf of Cooper, submitted claims to PSA on a Condition No. 2 surety bond in the amounts $234,206.33 (Arrowhead), $72,351.15 (Bowie), and $87,629.52 (Comanche). This bond was one of three which Cooper had obtained from AAIC. The bonds, which had been executed in May 1985, included:
 
 
 3
 (1) a $5,000 INDEMNITY BOND, No. 5250384, naming Oklahoma National Stockyards Co. as obligee and Cooper as principal;
 
 
 4
 (2) a $100,000 CONDITION NO. 1 BOND, No. 5250385, naming the Oklahoma City Livestock Exchange as the trustee/obligee and Cooper as principal;
 
 
 5
 (3) a $100,000 CONDITION NO. 2 BOND, No. 5250386, with a condition that Cooper would pay to later claimants the purchase price of all livestock purchased on its account.
 
 
 6
 Cooper was required to post the Condition Nos. 1 and 2 bonds by federal regulations in order to do business in the Oklahoma City Stockyards. In partial consideration for these three bonds, Cooper and the third-party defendants had executed a separate agreement to indemnify AAIC ("the Indemnity Agreement").
 
 
 7
 As a result of these claims, on June 3, 1987, AAIC notified Cooper that it was terminating the Condition Nos. 1 and 2 bonds effective thirty days after receipt of the notice, and that it was terminating the Indemnity Bond effective fifteen days after receipt of the notice. Cooper and AAIC made attempts to negotiate replacement bonds, but those attempts were not successful. As a result of Cooper's unbonded status, its right to operate as a sales commission company in the Oklahoma City Stockyards was rescinded.
 
 
 8
 The claims filed by Arrowhead, Bowie, and Comanche allegedly arose out of discussions these firms had with PSA. As a result of Hutson's bad checks, PSA had instituted an investigation of Hutson and Cooper, during the course of which it had issued a press release which Cooper claims contained false information about Cooper's involvement in the bad check transactions. Cooper emphatically denies any connection with Hutson during the time of the purchases.
 
 B
 
 9
 Cooper filed three separate federal lawsuits, which were later consolidated, alleging that AAIC had wrongfully terminated the livestock dealer surety bonds, causing the destruction of its business operations and the termination of a contract to sell CLMA.[1] Arrowhead, Bowie, and Comanche were also originally named as defendants on that claim. Cooper also alleged that the USDA, through the PSA, had conducted a negligent investigation which had the effect of damaging its business reputation and disrupting the purchase agreement whereby Dale Cooper's interest in CLMA was to have been transferred to Robert Rodenberger. Cooper sought compensatory and punitive damages.
 
 
 10
 In its answer, AAIC filed a counterclaim against Cooper and the third-party defendants seeking indemnification for attorneys' fees incurred in defending this litigation. In response, the Rodenbergers and Blakes also counterclaimed against AAIC, asserting the same wrongful termination claims pled by Cooper. Some time later, Comanche initiated a suit against AAIC in an Oklahoma district court, seeking a judgment on the Condition No. 2 bond.
 
 
 11
 On February 28, 1990, the district court entered judgment on eight motions, only three of which are at issue in this appeal. The five not here at issue essentially dropped Bowie, Comanche, and Arrowhead as defendants, and granted summary judgment in favor of AAIC on the counterclaim against it by the third-party defendants.
 
 
 12
 Pursuant to its order of November 16, 1988, the district court granted summary judgment in favor of AAIC on Cooper's claim of wrongful termination of the surety bonds. Cooper had asserted that AAIC wrongfully cancelled the bonds when it knew or should have known that the claims were frivolous because Hutson was not associated with Cooper at the time he passed the bad checks. Cooper contended that the bonds' termination clauses prohibited cancellation where a frivolous claim had been filed. In response, AAIC argued that the bonds had been terminated strictly in accordance with their provisions.
 
 
 13
 The district court focused on the termination language in paragraph (k) of the two Condition bonds, Nos. 5250385 and 5250386,[2] which provided:
 
 
 14
 This bond may be terminated by either party hereto delivering written notice of termination to the other party and the Packers and Stockyards Administration at least thirty (30) days prior to the effective date of such termination.... Immediately upon the filing of a claim for recovery on this bond, unless the Surety believes that such claim is frivolous, the Surety shall cause termination of this bond in accordance with this paragraph.
 
 
 15
 The district court ruled that the propriety of granting summary judgment hinged on whether the above clauses were ambiguous. Moreover, the court noted that the mere fact that the parties disagreed on the meaning of the clauses was not sufficient to raise a triable issue of fact. Construing the clauses, the court found "paragraph (k) of the subject bonds clear and unambiguous as to the basis for cancellation." Order of November 16, 1988 at 5. Further, the court concluded that there was no irreconcilable conflict between the two cancellation provisions. The court rejected Cooper's argument that the second phrase, being more specific, controlled the first, stating that that rule of construction did not apply unless the clauses were in irreconcilable conflict. Concluding that both provisions of the paragraph were applicable, the court found that the requirements had been complied with and granted summary judgment in favor of AAIC. See id. at 6-7.
 
 
 16
 Pursuant to its Order of January 30, 1989, the court granted a motion to dismiss Cooper's claims against the USDA and PSA. The district court granted the government's motion to dismiss because it ruled that sovereign immunity had not been waived by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 (1988), with respect to Cooper's claims, and the court thus did not have subject matter jurisdiction. In analyzing these claims, the court broke Cooper's arguments into two distinct allegations: "(1) that PSA knew that Hutson was violating certain rules and regulations and failed to act on this knowledge, and (2) that the PSA advised and encouraged Arrowhead, Bowie and [Comanche] to file claims on the Cooper firm bonds." Order of January 30, 1989 at 6.
 
 
 17
 As to the first allegation, the court ruled that the FTCA's discretionary function exception, 28 U.S.C. § 2680(a) (1988), applied because under the Packers and Stockyards Act, 7 U.S.C. § 181, et seq., PSA was granted broad enforcement discretion in that many of the provisions did not require PSA to follow a particular course of action when violations of the act were suspected. Thus PSA's actions toward Hutson were discretionary.
 
 
 18
 The court found that Cooper's second claim was "essentially an allegation that the PSA interfered with certain of the plaintiffs' contractual relationships[.]" Id. at 9. Accordingly, the FTCA's interference with contract exception, 28 U.S.C. § 2680(h) (1988), left intact the government's immunity. The court held that it was irrelevant that the interference arose from negligence rather than intentional conduct.
 
 
 19
 Finally, because Cooper did not allege the injury from the purportedly false press release as a separate claim for relief, the court considered it subsumed in the above holdings. See id. at 10 n. 7.
 
 
 20
 Pursuant to its Order of February 28, 1990, the court granted summary judgment in favor of Cooper and the third-party defendants on AAIC's indemnification claim. The sole question, in the eyes of the court, was whether the language of the indemnity contract extended to cover the costs of AAIC defending itself against claims that it was liable in tort to the indemnitors. AAIC argued that, but for the issuance of the bonds, this litigation would not have happened, and that it was therefore entitled to indemnification.
 
 
 21
 The court rejected AAIC's position and granted summary judgment against AAIC.
 
 II. JURISDICTION
 
 22
 Before turning to the merits of this appeal, we must deal with a jurisdictional question concerning the notices of appeal filed by Cooper. Cooper's first notice of appeal was filed on March 26, 1990. That notice named AAIC and the "United States of America, ex rel. United States Department of Agriculture" as defendants-appellees, but it failed to state that Cooper was appealing from the dismissal of the claims against the United States, mentioning only the February 28, 1990 final judgment. However, all supporting papers filed with the notice of appeal, including Cooper's docketing statement, indicated that Cooper was also appealing the dismissal of the claims against the United States; moreover, all the papers were actually served on the United States.
 
 
 23
 Recognizing the ambiguity, the United States Attorney's office spoke with the Tenth Circuit Clerk's office by telephone to discuss whether the United States was a party to the appeal and should file an entry of appearance. See Legal Memorandum of United States on the Issue of Jurisdiction As Requested By Order Dated May 2, 1991 at 2. On May 2, 1990, the United States Attorney's office sent a letter to the Tenth Circuit Clerk stating the belief that the United States was a party to the appeal, and entering an appearance for the United States. See id. at Exh. B.
 
 
 24
 On May 3, 1990, Cooper made a motion pursuant to Fed.R.App.P. 4(a)(5) in the district court to amend its notice of appeal so as to include the dismissal of its claims against the United States. The district court granted that motion on May 8, 1990, and Cooper filed its amended notice of appeal the same day.[3] Thereafter, the appeal proceeded until May 2, 1991, when we directed the United States and Cooper to address the following jurisdictional question:
 
 
 25
 Whether the Order of January 30, 1989, granting the government's motion to dismiss is appealable in light of the fact that the Notice of Appeal of March 26, 1990 made no reference to that Order, nor was reference made to it until an Amended Notice of Appeal was filed apparently outside of the 60 day time limit of Federal Rule of Appellate Procedure 4(a)(1)?
 
 
 26
 Having carefully considered the specific circumstances of this case, we answer that question in the affirmative. In so concluding we need not pass on the effect of the district court's order of May 8, 1990, allowing amendment of the notice of appeal.
 
 
 27
 We hold that Cooper's original notice of appeal filed March 22, 1990, together with the supporting papers and particular circumstances surrounding it, encompassed the dismissal of Cooper's claims against the United States and that we therefore have jurisdiction over the ruling dismissing those claims. In coming to this conclusion, we are guided by the Supreme Court's reasoning in two cases, Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) and Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). Foman involved the interpretation by a court of appeals of the scope of a notice of appeal: The appellant had first prematurely appealed an adverse judgment while a motion to vacate that judgment was pending, and later appealed the denial of its motions to vacate and amend the complaint, without specifically mentioning the judgment itself. After the court of appeals narrowly read the second notice of appeal to cover only the denial of the motions to vacate and amend, the Supreme Court held that such a narrow reading was in error, 371 U.S. at 181, 83 S.Ct. at 229:
 
 
 28
 Taking the two notices and the appeal papers together, petitioner's intention to seek review of both the dismissal and the denial of the motions was manifest. Not only did both parties brief and argue the merits of the earlier judgment on appeal, but petitioner's statement of points on which she intended to rely on appeal, submitted to both respondent and the court pursuant to rule, similarly demonstrated the intent to challenge the dismissal.
 
 
 29
 It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.
 
 
 30
 Contrary to the government's assertions in its memorandum here on this issue, Torres does not require the opposite result. Torres dealt solely with Fed.R.App.P. 3(c), which requires that the notice of appeal "shall specify the party or parties taking the appeal." There petitioner had not been named in the notice of appeal at issue, and the Court held that he had thus failed to appeal the judgment at issue. See 487 U.S. at 314, 108 S.Ct. at 2407. However, in explaining its holding the Court was scrupulous in its reaffirmation of its prior holding in Foman and in demonstrating how the two cases do not conflict. The Court noted that Foman addressed the question whether the requirements for a notice of appeal under former Rule 73(b), Fed.R.Civ.P., had been met, concluding "that in light of all the circumstances, the Rule had been complied with." Id. at 316, 108 S.Ct. at 2408. The Court went on to reiterate "the important principle for which Foman stands--"
 
 
 31
 [T]he requirements of the rules of procedure should be liberally construed and ... "mere technicalities" should not stand in the way of consideration of a case on its merits.... Thus, if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.
 
 
 32
 Id. at 316-17, 108 S.Ct. at 2408-09.
 
 
 33
 The requirements of both Foman and Torres have been met here. All of the supporting papers filed by Cooper explicitly stated that Cooper intended to appeal the dismissal of its claims against the United States.[4] Moreover, Cooper actually served copies of all of the relevant papers on the government, and the United States Attorney's office took pains to enter an appearance for the United States after consulting with the Tenth Circuit Clerk's office. The government was not misled and will not be prejudiced by the inclusion of the issue of the dismissal of the claims against it. Foman v. Davis, 371 U.S. at 181, 83 S.Ct. at 229. Moreover, there was no agreement between any of the parties regarding what issues would or would not be appealed.[5]
 
 
 34
 We hold that the claim of error in the dismissal of Cooper's claims against the United States is properly before us.
 
 III. COOPER'S CLAIMS AGAINST AAIC
 
 35
 In November 1988, the district court granted AAIC's motion for summary judgment against Cooper. On appeal, Cooper maintains that the court erred in deciding that motion because a perceived ambiguity in the language of the bond created a triable issue of material fact. We find Cooper's arguments unpersuasive and affirm the grant of summary judgment, reviewing the district court's summary judgment ruling under the de novo standard. See Patrick A. Doheny v. Wexpro Company, 974 F.2d 130, 133 (10th Cir.1992); Kaiser-Francis Oil Co. v. Producer's Gas Co., 870 F.2d 563, 565 (10th Cir.1989).
 
 
 36
 Here we are asked to construe, apparently for the first time, the termination provisions contained in a livestock bond required by federal law. The Packers and Stockyards Act, 7 U.S.C. § 181, et seq., authorizes the Secretary of Agriculture to require "reasonable bonds" from persons engaged in the livestock trade, 7 U.S.C. § 204 (1988), and to make rules and regulations necessary to carry out the provisions of the Act, 7 U.S.C. § 228 (1988). The relevant regulations are set out at 9 C.F.R. § 201.1, et seq. (1992). The Packers and Stockyards Act bond requirements exist to protect livestock sellers against losses from sales to insolvent or defaulting buyers. See Travelers Indemnity Company v. Manley Cattle Company, 553 F.2d 943, 945 (5th Cir.1977).
 
 
 37
 The Secretary has required all market agencies, packers, and dealers to maintain bonds "on forms approved by the Administrator." 9 C.F.R. § 201.29 (1992). Since the bonds at issue in this case were required by federal law, they must be construed according to federal, and not state, law. Cf. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) (noting that contracts governed by federal labor laws require a uniform body of governing law) (citing Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04, 82 S.Ct. 571, 576-77, 7 L.Ed.2d 593 (1962)); Adair State Bank v. American Casualty Company of Reading, Pennsylvania, 949 F.2d 1067, 1072 (10th Cir.1991) (when the "bond ... is required by statute, we review the bond in light of the statute"). That is to say, the bond provisions in question were approved (and in the case of notice to the Packers and Stockyards Administration, required, see 9 C.F.R. § 201.34 (1992)), by the Department of Agriculture.
 
 Paragraph (k) of the bonds states that
 
 38
 This bond may be terminated by either party hereto delivering written notice of termination to the other party and the Packers and Stockyards Administration at least thirty (30) days prior to the effective date of such termination. In the event that the Surety named herein writes a new bond to replace this bond for the same Principal named herein, the 30-day termination will be waived, and this bond will become terminated as of the effective date of the replacement bond. Immediately upon filing a claim for recovery on this bond, unless the Surety believes that such claim is frivolous, the Surety shall cause termination of this bond in accordance with this paragraph.
 
 
 39
 Cooper argues that the first and third sentences of paragraph (k) conflict with each other when a frivolous claim is filed against the bond, requiring that the surety undertake an investigation of all claims filed on bonds before terminating. See Brief in Chief of Appellant at 7-20.
 
 
 40
 The question whether paragraph (k) is contradictory or ambiguous is a matter of law. See Potter v. Ranger Insurance Company, 732 F.2d 742, 743 (9th Cir.1984). We find that paragraph (k) is clear on its face and does not require that the surety investigate claims before terminating a bond. The first sentence of paragraph (k) gives both parties to the bond the right and power to terminate the bond for any reason or no reason at all, so long as the terminating party notifies the other party and the Packers and Stockyards Administration at least 30 days prior to the effective date of termination. This allows, for example, the surety to terminate the bond if it no longer feels secure in its relationship with the bonded party.
 
 
 41
 The third sentence of paragraph (k) requires the surety to terminate the bond whenever a claim is filed on the bond, unless it believes that the claim is frivolous. It is important to note what the third sentence does not do: It does not prohibit the surety from terminating the bond even if frivolous claims are filed against the bond. It simply mandates termination if non-frivolous claims are filed. Paragraph (k) must be understood in its entirety. When a non-frivolous claim is filed against a bond, the surety is at risk with respect to that account, and it is economically reasonable to require termination of the bond at that time. But it is also reasonable that the surety should be able to terminate the bond if claims that turn out to be frivolous are filed, because the fact that even frivolous claims are being filed against a bond may indicate to the surety that the bond is at more risk than previously assumed. Both the first and third sentences must be read together with the second, which permits the surety to replace a terminated bond if, for example, a claim turns out to be unmeritorious or if the bonded party is able to supply the surety with more security than under the terminated bond. As noted before, Cooper and AAIC did attempt to renegotiate the bonds but Cooper was unable to provide the security requested by AAIC.
 
 
 42
 In short, paragraph (k) of the bond agreements gave AAIC the right to terminate the bonds with Cooper for any reason or for no reason at all. This is the only reasonable interpretation of the bond language, and we feel that Cooper's proposed construction stretches the bond's language beyond what is reasonable. See, e.g., Potter, 732 F.2d at 744; Southwestern Stationery & Bank v. Harris Corp., 624 F.2d 168, 170 (10th Cir.1980); cf. William C. Roney & Co. v. Federal Insurance Company, 674 F.2d 587, 591 (6th Cir.1982) ("A construction of a contract that is fair and reasonable will prevail over one that is not.").
 
 
 43
 In view of our interpretation of paragraph (k), Cooper's contentions that the district court erred in granting summary judgment are unpersuasive. The district court properly held that Cooper's affidavits failed to establish the existence of the elements necessary to support its claim for wrongful termination. Under this contract, as a matter of law Cooper could not have done so under any circumstances, because AAIC was simply free to cancel. There could be no genuine issue as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). We agree with the district judge that there was no showing of a genuine issue of material fact and that AAIC was entitled to judgment in its favor on Cooper's claims as a matter of law under the terms of the bonds.
 
 
 44
 Cooper argues further that the grant of summary judgment for AAIC was error because there should have been a hearing on Cooper's theory of breach of the implied duty between the parties to the bonds to deal fairly and act in good faith, citing Christian v. American Home Assurance Co., 577 P.2d 899 (Okla.1977), inter alia, and that there was evidence supporting Cooper's theory since the bond claim was received and no investigation was made before cancellation. Brief in Chief of Appellant Cooper at 15-20. See also McCorkle v. Great Atlantic Ins. Co., 637 P.2d 583 (Okla.1981).
 
 
 45
 We feel that this additional theory does not demonstrate error in the district court's ruling. As noted earlier, the bonds were required by federal law and their form was approved by the PSA. We believe they must therefore be construed as a matter of federal law and that a cause of action for breach of the bonds or duty arising in connection with them may only exist as a claim premised on federal law. See Allis-Chalmers Corp. v. Lueck, 471 U.S. at 216, 105 S.Ct. at 1913 (since the extent of either duty to act in good faith or explicit contractual duty to pay ultimately depends on terms of the agreement between the parties, both are "tightly bound with questions of contract interpretation that must be left to federal law"). Because the tort claimed here by Cooper is similar to the one at issue in Allis-Chalmers Corp. v. Lueck, and because the bonds here are also required by federal law, we feel that the Court's reasoning demonstrates that we should come to the same conclusion regarding Cooper's claim of bad faith termination of the bonds.[6]
 
 
 46
 In sum, the district judge properly granted summary judgment for AAIC on Cooper's claims of wrongful termination of the bonds.
 
 
 47
 IV. COOPER'S CLAIMS AGAINST THE UNITED STATES
 
 
 48
 Cooper next argues that his Federal Tort Claims Act claims based on actions of the Packers and Stockyards Administration were wrongfully dismissed. The district court dismissed Cooper's claims for lack of subject matter jurisdiction, finding them barred by both the discretionary function exception of 28 U.S.C. § 2680(a) (1988) as well as the defamation and interference with contract rights exceptions of § 2680(h).[7] Cooper says that its cause of action against the government is for the government's negligent handling of the claims against Hutson, rather than for defamation or contract interference.
 
 
 49
 The crux of Cooper's argument on appeal is that "the Government did not use due care in performing its nondiscretionary duties." Appellant's Brief in Chief at 27. Essentially, Cooper is claiming simply that the government was negligent in its conduct that related to Cooper and Cooper should therefore recover. See id. at 26-27. We are not persuaded that Cooper has asserted the essential elements of a tort theory of recovery. Negligence is a "basis of tort liability." W. Page Keeton et al., Prosser and Keeton on Torts § 28 at 161 (5th ed. 1984). However, mere negligence is not enough. There must first be a duty to the plaintiff, then a breach of that duty, and finally injury resulting proximately from the breach. See Lay v. Dworman, 732 P.2d 455, 457 (Okla.1986); Prosser and Keeton on Torts § 30 at 164. But Cooper has not demonstrated that the government was under a legal duty to Cooper to conduct its investigations non-negligently. Thus we are not persuaded that Cooper has shown the existence of the threshold element of a government duty in connection with the conduct at issue here.
 
 
 50
 However, assuming that such a duty did exist, Cooper's claim of allegedly "negligent investigation" would be barred by the discretionary function exception of 28 U.S.C. § 2680(a), which inter alia exempts from FTCA coverage "any claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."
 
 
 51
 Cooper's claims here fall into two categories: That PSA knew Hutson was operating in violation of PSA rules and regulations and yet failed to act on that knowledge, and that the investigation of Cooper was somehow flawed. See Order of January 30, 1989 at 6. With respect to the first category, the discretionary function exception bars the cause of action because the Packers and Stockyards Act grants very broad discretion to the PSA regarding enforcement of rules and regulations. As noted, 7 U.S.C. § 204 (1988) states that PSA "may" require bonds to be posted and "may" suspend violators of that requirement. And while the regulations promulgated by the PSA do require certain actors to obtain bonds in order to operate in the stockyards, they do not set forth procedures for PSA to follow when violations are suspected. See 9 C.F.R. §§ 201.29-201.35 (1992). In short, the decision of whether or not to investigate and whether or not to enforce is left to the PSA's discretionary judgment as to what types of violations justify investigation and enforcement to effectuate the policy behind the Packers and Stockyards Act. This part of Cooper's claim is thus barred by the discretionary function exception. Cf. Barnson v. United States, 816 F.2d 549, 553-54 (10th Cir.) (decision not to warn of health risks was protected by discretionary function exception when it was motivated by political policy), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987).
 
 
 52
 With respect to the claims that the investigation of Cooper itself was negligently performed, we could find no regulations mandating particular inquiries to be made or methods of making them.[8] Rather, the PSA is invested with virtually complete discretion to investigate in any manner it sees fit. See, e.g., 7 U.S.C. § 210(a) (1988) (the Secretary shall "investigate the matters complained of in such manner and by such means as he deems proper"); 7 U.S.C. § 210(c) (1988) ("Secretary may at any time institute an inquiry on his own motion ..."). We have previously stated that "it is clear that if a duty is not mandatory or not clearly specified then it is discretionary." Weiss v. United States, 787 F.2d 518, 523 (10th Cir.1986). The quoted statutes are neither mandatory nor clearly specified, and the duty to investigate is thus discretionary.
 
 
 53
 Under similar circumstances, the Supreme Court has held the discretionary function exception applicable. In United States v. Gaubert, --- U.S. ----, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Court held that the use by the Federal Home Loan Bank Board ("FHLBB") of methods of enforcement and supervision not specifically set forth in its statutes or regulations does not waive the protections of the discretionary function exception. See --- U.S. at ----, 111 S.Ct. at 1277. In finding that the FHLBB's actions were within the exception, the Court noted that the Board took the challenged actions in order to protect the FSLIC's insurance fund and thus the actions were based on public policy considerations. The Court held that "[i]n the end, [the complaint] alleges nothing more than negligence...." Id. at ----, 111 S.Ct. at 1279. Here it appears that PSA took its actions to further its mission of protecting the stockyard trade, see Travelers Indemnity Company, supra. Hence, Cooper's claims that the investigation was negligent are barred by the discretionary function exception.[9]
 
 
 54
 The substance of Cooper's claims appears to be that Packers and Stockyards Administration employees negligently brought false information to the attention of third parties. This appears to involve the communication of an idea that is required for defamation. See Jimenez-Nieves v. United States, 682 F.2d 1, 6 (1st Cir.1982). But libel and slander, which are the equivalent of defamation, see id., are also excepted from the FTCA waiver of sovereign immunity by 28 U.S.C. § 2680(h) (1988). Thus, to the extent that Cooper's claims are based upon allegations of defamation, they are also barred.
 
 
 55
 Finally, Cooper's claims against the government could be construed as claims of tortious interference with present or future contractual relations. See, e.g., I R.Doc. 10 at 4-6 (alleging that the actions of the government had resulted in the cancellation of a contract to sell the business and the loss of future business opportunities). But those claims are also barred by 28 U.S.C. § 2680(h), which further exempts any claims "arising out of ... interference with contract rights."
 
 
 56
 Thus whether Cooper's claims against the government charge interference with contract rights, publication of defamatory information alleged to have caused damage to Cooper, or negligent performance of discretionary investigative functions, the substance of all of those claims is barred by § 2680. Accordingly, the district court was correct in dismissing those claims for lack of subject matter jurisdiction.
 
 V. AAIC'S INDEMNITY CLAIMS
 
 57
 Finally, AAIC has appealed the district court's order in favor of Cooper and adverse to AAIC on its claims under the indemnity agreements. We affirm that ruling.
 
 
 58
 The indemnity agreements at issue provided in part that:
 
 
 59
 The Indemnitors will indemnify the Surety against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such Bonds ..., including but not limited to sums paid or liabilities incurred in settlement of and expenses paid or incurred in connection with claims, suits or judgments under such Bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.
 
 
 60
 AAIC claims that the above provisions entitle them to recover the attorneys' fees and other expenses of defending against Cooper's actions and prosecuting their counterclaims and third-party claims. The district court held that the language of the Indemnity Agreement did not cover such claims. We agree.
 
 
 61
 The bottom line in all of Cooper's claims against AAIC was that it negligently or intentionally terminated its bonds with CLMA in a wrongful manner. As the district court correctly noted, the general rule regarding indemnity contracts is that they "will not be construed to indemnify the indemnitee against losses resulting form his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it." 41 Am.Jur.2d Indemnity § 15 at 700 (1968 & Supp.1989). No such "clear and unequivocal terms" appear in the Indemnity Agreement at issue here. Moreover, a far more obvious meaning is readily apparent when the Indemnity Agreement is considered alongside the bonds: The Indemnity Agreement was intended as further security for AAIC in case it had to pay out claims on the bonds against Cooper, not claims against itself by Cooper. Further, we agree with the Ninth Circuit's reasoning in American Triticale, Inc. v. Nytco Services, Inc., 664 F.2d 1136, 1146 (9th Cir.1981), that language of the type here at issue cannot support indemnification against claims of intentional tort. See also Sinclair Oil & Gas Co. v. Brown, 220 F.Supp. 106 (E.D.Okla.1963), aff'd, 333 F.2d 967 (10th Cir.1964) (same result).
 
 VI. CONCLUSION
 
 62
 Accordingly, the decisions of the district court challenged in Nos. 90-6124 and 90-6127 are AFFIRMED.
 
 
 
 *
 Honorable David K. Winder, U.S. District Judge for the District of Utah, sitting by designation
 
 
 [1]
 Jurisdiction over Cooper's claims against the United States was founded upon the FTCA and 28 U.S.C. § 1346(b) (1988). Since AAIC is a California corporation whose principal place of business is in California, and Dale Cooper and CLMA are both citizens of Oklahoma, jurisdiction over Cooper's claims against AAIC was properly based upon diversity of citizenship
 
 
 [2]
 There was no argument regarding the Indemnity Bond's 15 day termination provision below, see Order of November 16, 1988 at 4 n. 4, nor is any presented on appeal. Thus all subsequent reference will be to the two federally mandated "Condition" bonds
 
 
 [3]
 The district court explicitly granted the motion to amend because it felt that Cooper had demonstrated the requisite "good cause for allowance of the amendment." See Order Dated May 8, 1990, at 2
 
 
 [4]
 Thus Cunico v. Pueblo School District No. 60, 917 F.2d 431 (10th Cir.1990), is inapposite because in that case the clear intention of the plaintiff was to appeal only one part of the judgment, and the plaintiff later raised yet another issue on appeal. See 917 F.2d at 444. Wright v. American Home Insurance Co., 488 F.2d 361 (10th Cir.1973), is more akin to the facts of this case. In Wright, both sides had briefed the merits and the appellant's statement of issues showed a clear intent to appeal the issue in question, and this Court permitted the appeal to go forward. See 488 F.2d at 363; see also Dupree v. United Parcel Service, Inc., 956 F.2d 219, 220 n. 1 (10th Cir.1992) ("record shows that the [appellants] clearly intended to appeal both ... orders"); cf. Smith v. Barry, --- U.S. ----, 112 S.Ct. 678, 682, 116 L.Ed.2d 678 (1992) (stating that "the notice afforded by a document ... determines the document's sufficiency as a notice of appeal" and stating that the rules do not preclude an appellate court from treating a filing, styled as a brief, as a notice of appeal if the filing is timely and conveys the information required); accord Battle v. Anderson, 970 F.2d 716, 718 n. 3 (10th Cir.1992)
 
 
 [5]
 Averitt v. Southland Motor Inn, 720 F.2d 1178 (10th Cir.1983) is also inapposite, as that case involved just such an agreement
 
 
 [6]
 See also Cipollone v. Liggett Group, Inc., --- U.S. ----, ----, 112 S.Ct. 2608, 2621, 120 L.Ed.2d 407 (1992) (courts must consider whether common law claims are in fact preempted by conflict between the duty predicating such claims and the scope of federal statute or regulation). See 7 U.S.C. § 228c (Federal preemption of State and local requirements). While this preemption point was apparently not raised in the district court, we exercise our discretion to consider it, Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976), since the statute and regulations requiring the bonds were presented and considered below and form the basis for our preemption conclusion
 
 
 [7]
 In reviewing a dismissal for lack of subject matter jurisdiction, our standard of review is de novo. See Redmon ex rel. Redmon v. United States, 934 F.2d 1151, 1155 (10th Cir.1991)
 
 
 [8]
 We are mindful that a litigant may have a valid FTCA claim when there is a demonstrated negligent breach in the performance of specified actions mandated by regulations. For example, in First National Bank in Albuquerque v. United States, 552 F.2d 370, 375-77 (10th Cir.), cert. denied, 434 U.S. 835, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977), we noted that an FTCA claim might lie for the government's negligent failure to comply with specific scientific standards for approving chemical compounds for sale to the public, but found that the plaintiffs in that case had failed to demonstrate the violation of such specific, mandatory requirements. See also Griffin v. United States, 500 F.2d 1059, 1059 (3d Cir.1974) (holding that the government may be liable "where its employees, in carrying out their duties, fail to conform to pre-existing statutory and regulatory requirements"); Berkovitz by Berkovitz v. United States, 822 F.2d 1322, 1332 (3d Cir.1987) (reaffirming this part of Griffin ), rev'd on other grounds, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). However, "[w]hen an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind" within the discretionary function exception. United States v. Varig Airlines, 467 U.S. 797, 819-20, 104 S.Ct. 2755, 2767-68, 81 L.Ed.2d 660 (1984)
 
 
 [9]
 The gist of Cooper's claims against the government is stated as follows:
 The crux of the negligence action of the Plaintiffs is that the Packers and Stockyards Administration failed to properly investigate rumors and accusations against the Plaintiffs prior to encouraging Bowie, Arrowhead, and Comanche to file claims on the bonds and issuing an inaccurate news release.
 Appellant's Brief in Chief at 27.